**In re CAIN.**

No. 76-13095-CA.

Circuit Court, Duval County.

December 4, 1976.

V. James Facciolo and Henry M. Searcy of Searcy, Smith, Facciolo & Kirby, Jacksonville, for the petitioner.

J. J. Schickel, for the office of the State Attorney.

Steven A. Werber and John F. Corrigan, both of Jacksonville, for St. Vincent's Medical Center.

Roy Lewis, Jacksonville, for Dr. Jacob Green.

JOHN S. COX, Circuit Judge.

*Declaratory judgment:* This matter came on to be heard upon the petition for declaratory judgment filed in this court on November 30, 1976, wherein the petitioner, Jerry Cain, requested this court to order St. Vincent's Medical Center to discontinue the extraordinary measures now being undertaken to maintain his deceased wife's respiration and heartbeat, and deliver her body for autopsy and burial in accordance with his wishes provided that the treating and consulting physicians agree that there is no reasonable possibility of his deceased wife's ever emerging from her present comatose condition to a cognitive sapient state, and further requested that neither he, the petitioner, the treating and consulting physicians, nor St. Vincent's Medical Center be civilly or criminally liable for withdrawing these present life-support systems. The petition contained the following allegations —

That Celia Cain was admitted to St. Vincent's Medical Center for medical treatment on November 18, 1976, and that while a patient in the hospital she expired on November 20, 1976; that since November 20, 1976 Celia Cain has been medically dead in that she has had no brain activity whatsoever; that four electroencephalogram readings have been taken since that time, and none of them have indicated any cortical response; that the treating neurologist, Dr. Jacob Green, had indicated that Celia Cain's brain had been medically dead and that there was no hope that she could ever return to a cognitive sapient state; that since the time of her death Celia Cain had certain of her vital bodily functions performed with the aid of an artificial respirator and through the application of other extraordinary measures; that her treating physicians were of the opinion that she had been and continued

to be unable to maintain any of these vital bodily functions without the existence of the extraordinary measures and equipment being employed; that in view of his wife's death the petitioner wished to have her body removed from St. Vincent's Medical Center for the purpose of having an autopsy performed at the office of the county medical examiner and then to have her body interred in accordance with the laws of the state of Florida. The petitioner then prayed that this court declare his right, under Florida Statutes, §872.04(1), to have these requests complied with by the hospital and attending physicians.

According to the order of this court, evidence was taken herein on December 3, 1976. The court heard the testimony, as required by its order, of Dr. Eugene Glenn, the attending gynecologist; Dr. Jacob Green, the attending neurologist; Dr. William E. Faris, a consulting internist; Dr. Peter Lipkovic, the Duval County Medical Examiner. Moreover, the affidavit of Dr. Gerald Olsen, the treating internist, was filed in evidence. The court then heard testimony from the petitioner, Jerry Cain; the sister of Celia Cain, Della Gilreath; and the father of Celia Cain, Forest Berrie. In addition, the court received in evidence the hospital records relating to Celia Cain's treatment in St. Vincent's Medical Center, as well as the four electroencephalogram readings obtained by her physicians.

Based upon the testimony presented to this court and the documents received in evidence, this court makes the following findings of fact —

The petitioner, Jerry Cain, is the husband of Celia Cain. Mr. and Mrs. Cain resided in Duval County, Florida. On November 18, 1976 Mrs. Cain was admitted to St. Vincent's Medical Center for the purpose of having a hysterectomy performed by Dr. Eugene Glenn. The surgery was performed upon her on November 19, 1976. During the evening of November 20, 1976 Celia Cain became "in extremis" and was placed on a respiratory device which has, since that time, been the sole means by which her respiratory and circulatory functions have been maintained.

It also appears from the undisputed testimony of the physicians that by November 21, 1976 Celia Cain was medically dead in that she has had no cortical or cerebral activity whatsoever and that she would be unable to maintain any of her vital life signs without the constant intervention of the extraordinary and heroic medical means now being employed to maintain her respiration and blood pressure. It was further the undisputed testimony of the physicians that Mrs. Cain would never return to a sapient cognitive state, and that there is no means known to medical science

by which her brain damage could be repaired or by which her condition could otherwise be improved.

The court therefore finds that Celia Cain is dead. The court also finds that it is the wish of the petitioner and the deceased's sister, mother and father that her body be removed from these extraordinary and heroic life-support systems and that she be removed from the hospital in accordance with the wishes of the petitioner for autopsy and burial.

Upon these findings of fact, the court makes the following conclusions of law —

1. That the doctors' determination of death in the present circumstances is both legally and medically sound and proper, and there is no basis in fact or logic to apply the common-law criteria for determination of death on the facts in this case because respiration and heart beat are not spontaneous, but are being induced and maintained solely by supportive devices.

2. That as the surviving spouse of Celia Cain, the petitioner has a right to dispose of her body according to his wishes within those confines established by the laws of this state.

It is, therefore, ordered —

1. That the attending physicians of Celia Cain be permitted and authorized, upon approval of such ethics committee or other reviewing body as may exist at St. Vincent's Medical Center, to discontinue and disconnect the life-support systems presently being employed upon her.

2. That such systems shall remain disconnected for a period of 45 minutes and thereafter, unless her vital life signs continue to be present at the expiration of said 45 minute period, in which event the life-support devices will be connected again.

3. That in the event the said life-support systems are not resumed and replaced and no heart beat can be detected by the physician, or physicians, in attendance, then a death certificate may be executed at St. Vincent's Medical Center in accordance with the laws of the state of Florida, and the deceased's body shall be released for an autopsy and burial in accordance with the petitioner's wishes.

4. That no civil or criminal liability shall attach to any of the attending or consulting physicians, St. Vincent's Medical Center, its officers, agents, employees and staff, or the petitioner for the act of disconnecting the life-support devices. Further no civil liability shall attach to said persons or entities for the detention of the body of Celia Cain contrary to the expressed wishes of the petitioner.